Julio CANALES, Plaintiff,

v.

Thomas GATZUNIS, Commissioner, et al., Defendants.

Civil Action No. 13–11766–JLT.

United States District Court, D. Massachusetts.

Oct. 28, 2013.

Erin C. Birmingham, Law Office of EC Birmingham Anadu, West Roxbury, MA, for Plaintiff.

Melissa J. Garand, Koufman & Frederick, LLP, Salem, MA, Allen H. Forbes, Christopher G. Perillo, Suffolk County Sheriff's Department, Gwen A. Werner, Massachusetts Attorney General's Office, Boston, MA, for Defendants.

## MEMORANDUM

TAURO, District Judge.

### I. *Introduction*

Plaintiff files this suit sounding in tort and civil rights violations against various defendants for events occurring at the Suffolk County House of Correction ("SCHOC") in late 2010. Presently before this court are Defendants Andrea J. Cabral, Gerard Horgan,[1] and the Suffolk County Sheriff's Department's *Motion to Dismiss for Failure to State a Claim* [# 14] and Defendant Thomas Gatzunis's *Motion to Dismiss for Failure to State a Claim* [# 16]. For the following reasons, Defendant Gatzunis's *Motion to Dismiss* is ALLOWED in its entirety and Defendants Cabral, Horgan, and the Suffolk County Sheriff's Department's *Motion to Dismiss* is ALLOWED IN PART and DENIED IN PART.

---

**1.** Plaintiff's Complaint erroneously refers to Defendant Horgan as "Gerard Hogan." *See* Notice of Removal [# 1] Ex. 1 [hereinafter Compl.].

## II. *Background*

### A. *Facts* [2]

Plaintiff brings this action against the Suffolk County Sheriff's Department, Andrea J. Cabral in her official capacity as the Suffolk County Sherriff, and Gerard Horgan in his individual capacity and his official capacity as Superintendent of the SCHOC (collectively: "County Defendants"), Thomas Gatzunis in his official capacity as the Public Safety Commissioner for the Commonwealth of Massachusetts, Prison Health Services, NaphCare, Inc., Elnora Harris in her individual and official capacities, Jennifer Foley in her individual and official capacities, Nathaniel Stillman in his individual and official capacities, Irina Natapov in her individual and official capacities, and Colleen Collins in her individual and official capacities.

Plaintiff was in the custody and control of Defendants at the SCHOC during 2010 and 2011.[3] During Plaintiff's incarceration at the SCHOC, he alleges that Defendants "subject[ed] him to reckless, negligent and cruel medical treatment." [4] On November 18, 2010, Plaintiff requested his seizure medication from Defendant Harris.[5] Rather than give Plaintiff his seizure medication, Harris erroneously informed Plain-

tiff that he had HIV.[6] Although Plaintiff protested that he was not HIV positive, Harris insisted that he had HIV and was required to take antiviral medication.[7]

Despite Plaintiff's repeated assertions that he did not have HIV, Defendants nonetheless continued to administer antiviral HIV medications to Plaintiff.[8] Plaintiff was required to take such medications multiple times each day.[9] Plaintiff requested that he be allowed to see his medical paperwork and demanded that he be tested for HIV, all to no avail.[10] Plaintiff also requested mental health assistance.[11] On or about December 10, 2010, Plaintiff was contacted by the SCHOC infirmary.[12] A female employee informed Plaintiff that SCHOC was making a mistake and had been giving Plaintiff another inmate's medication.[13] On or about December 16, 2010, SCHOC provided Plaintiff blood test results showing that he did not have HIV. While Plaintiff was under the custody of Defendants, they also failed to provide Plaintiff with the medications he was actually prescribed.

Because Defendants had informed Plaintiff that he had HIV and continued to administer HIV medications to him, Plain-

---

2. Because the issues analyzed here arise in the context of a motion to dismiss, this court presents the facts as they are related in Plaintiff's Complaint, *see Trans–Spec Truck Serv., Inc. v. Caterpillar, Inc.,* 524 F.3d 315, 321 (1st Cir.2008), and construes those facts in the light most favorable to Plaintiff, *see Pettengill v. Curtis,* 584 F.Supp.2d 348, 362 (D.Mass. 2008).

3. The Complaint is unclear whether Plaintiff was incarcerated at the SCHOC during all of 2010 and 2011, or whether he was only incarcerated during late 2010 and early 2011 when the relevant events occurred. The Complaint also largely fails to distinguish between the actions of each Defendant.

4. Compl. ¶ 16.

5. Compl. Ex. A [hereinafter Presentment Letter].

6. Presentment Letter.

7. Presentment Letter.

8. Presentment Letter.

9. Presentment Letter.

10. Presentment Letter.

11. Presentment Letter.

12. Presentment Letter.

13. Presentment Letter.

tiff informed his friends and family that he was HIV positive. Plaintiff continues to suffer from the stigma associated with being HIV positive. He also continues to suffer great emotional and physical harms. Plaintiff has also developed a deep mistrust and fear of doctors and other members of the medical profession, as well as extreme anxiety regarding communicable diseases.[14] Plaintiff suffers from a number of medical problems including, but not limited to: nausea, vomiting, spitting up blood, diarrhea, bloody stool, headaches, stomach pain, rectal bleeding, dizziness, rashes, problems sleeping, nightmares, muscle and joint pain, weight loss, loss of appetite, anorexia, racing heartbeat, weakness, shaky hands, extreme nervousness, loneliness, depression, anxiety, and suicidal thoughts.

### B. *Procedural History*

On June 13, 2013, Plaintiff filed his Complaint in Suffolk County Superior Court. On July 24, 2013, Defendants filed a *Notice of Removal* [# 1] in this court. On August 29, 2013, Defendant Prison Health Services, Inc. filed its *Answer* [# 12]. On August 30, 2013, County Defendants filed a *Motion to Dismiss for Failure to State a Claim* [# 14] and Defendant Gatzunis filed his *Motion to Dismiss for Failure to State a Claim* [# 16]. On September 13, 2013, Plaintiff filed a *Memorandum of Law in Opposition to Defendants' Motions to Dismiss* [# 30]. On September 24, 2013, the medical professional Defendants filed an *Assented to Motion for Referral to a Med-ical Malpractice Tribunal* [# 30], which this court ALLOWED.

### III. *Discussion*

Plaintiff's Complaint raises a variety of claims contained in six counts. Count I raises claims under the Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, § 4. Count II raises claims under the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, §§ 11H and I. Count III asserts tort claims for intentional infliction of emotional distress. Count IV asserts common-law negligence claims. Count V raises claims for violation of Plaintiff's federal constitutional rights pursuant to 42 U.S.C. § 1983. Finally, Count VI raises claims for common-law assault and battery.

### A. *Standard of Review*

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "court must 'take all factual allegations as true and draw all reasonable inferences in favor of the plaintiff.'"[15] In order to survive a motion to dismiss, a complaint must include factual allegations that, taken as true, demonstrate a plausible claim for relief.[16] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[17] In order to satisfy the minimal requirements of notice pleading, a plaintiff cannot "lump" multiple defendants together and must "state clearly which defendant or defendants committed each of the alleged wrongful acts."[18] This

---

14. Presentment Letter.

15. *Pettengill*, 584 F.Supp.2d at 362 (internal punctuation and emphasis omitted) (quoting *Rodríguez–Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 96 (1st Cir.2007)).

16. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–58, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Trans–Spec*, 524 F.3d at 320.

17. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

18. *Bagheri v. Galligan*, 160 Fed.Appx. 4, 5 (1st Cir.2005); *Atuahene v. City of Hartford*, 10 Fed.Appx. 33, 34 (2d Cir.2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, Atuahene's complaint failed to

court may consider the "facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice may be taken." [19]

## B. Section 1983 Claims

■ Count V asserts § 1983 claims against all Defendants based on a violation of Plaintiff's Fourth and Fourteenth Amendment rights.[20] Plaintiff seeks an award of damages to compensate him for his injuries. It is well established, however, that neither states nor state officials sued in their official capacities for damages are "persons" for purposes of § 1983.[21] On January 1, 2010, the Commonwealth of Massachusetts assumed control of the Suffolk County Sheriff's Department.[22] The Sheriff's Department and its employees, acting in their official capacities, are therefore to be treated as the Commonwealth itself for purposes of this suit. Consequently, the claims in Count V must be dismissed against the Sheriff's Department and Defendants Cabral and Horgan to the extent they were acting in their official capacities and against Defendant Gatzunis.

■ This leaves only the § 1983 claim against Defendant Horgan in his individual capacity. Plaintiff's Complaint does not allege any facts indicating that Horgan was personally involved in administering his medical care at SCHOC. Rather, his claim against Horgan appears to be premised on supervisory liability.[23] State officials sued in their individual capacities may be held liable only "on the basis of their own acts or omissions," and not " 'for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*' "[24] Additionally, a supervisor "cannot be liable for merely negligent acts."[25] Instead, the "supervisor's acts or omissions must amount to a reckless or callous indifference to the constitutional rights of others."[26] A supervisor displays such

satisfy this minimum standard...."); *Sires v. Hefferman,* No. 10–11993–MLW, 2011 WL 2516093, at *5 (D.Mass. June 21, 2011).

19. *Nollet v. Justices of the Trial Court,* 83 F.Supp.2d 204, 208 (D.Mass.2000).

20. Although Plaintiff's Complaint asserts violations of his Fourth and Fourteenth Amendment rights, his Opposition does not address violations of his Fourth Amendment rights. Rather, Plaintiff's Opposition focuses on the violation of his Eighth Amendment rights as recognized in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). *See* Pl.'s Mem. Law Opp'n Defs.' Mots. Dismiss [# 28], 7–11.

21. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 & n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

22. Mass. St. 2009, c. 61, § 6 (effective January 1, 2010) (transferring Barnstable, Bristol, Dukes, Nantucket, Norfolk, Plymouth and Suffolk Sheriffs and their employees to the Commonwealth).

23. It is somewhat unclear what Plaintiff's theory is because Plaintiff has failed to differentiate between the various Defendants in his Complaint. Nonetheless, the Complaint states that Defendants "knew or should have known that [Plaintiff] was not HIV positive and that diagnosing him and treating him for HIV would cause [Plaintiff] great harm." Compl. ¶ 57.

24. *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 49 (1st Cir.2009) (quoting *Iqbal,* 556 U.S. at 676, 129 S.Ct. 1937); *see also Leavitt v. Corr. Med. Servs., Inc.,* 645 F.3d 484, 502 (1st Cir.2011).

25. *Febus–Rodriguez v. Betancourt–Lebron,* 14 F.3d 87, 92 (1st Cir.1994).

26. *Id.* Stating a claim for violation of a person's Eighth Amendment rights also requires showing that prison personnel acted with deliberate indifference. *See Estelle,* 429 U.S. at 104, 97 S.Ct. 285.

reckless indifference "when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights."[27] Deliberate indifference is akin to willful blindness.[28] Even where a supervisor does not know of the specific actions of a subordinate that violate a person's constitutional rights, a supervisor may be held liable if he is aware of a general "pattern or practice" that threatens persons' constitutional rights and is deliberately indifferent to the danger.[29] "[I]solated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference."[30]

 Plaintiff has failed to plead sufficient facts to make out a plausible claim for supervisory liability against Defendant Horgan. First, the Complaint is devoid of any suggestion that Horgan personally knew Plaintiff was being administered HIV medications or was aware of Plaintiff's protests. Second, Plaintiff fails to plead any facts to suggest that Horgan was aware of similar medication errors or other practices by the medical staff that posed a risk to inmates' constitutional rights. Plaintiff merely states that "Defendants have a disorganized medical program and failed to maintain a quality assurance program."[31] Plaintiff also states that SCHOC failed "to maintain adequate and accurate medical records."[32] Even taking these allegations as true, Plaintiff does not allege that Horgan himself was

aware of a threat to inmates' constitutional rights. This is due in part to Plaintiff's failure to allege anything more specific than general factual allegations purportedly applicable to all Defendants. Such pleading fails to inform Horgan or this court of the factual basis for Plaintiff's supervisory liability claim. Nonetheless, as discussed below, Plaintiff has requested that this court allow him to file an amended complaint to give him an opportunity to add sufficient factual allegations, should this court find them lacking. Because this court will allow Plaintiff to file an amended complaint in this matter, Defendants' Motion to Dismiss Count V as to Horgan in his individual capacity is denied without prejudice to Defendants renewing the motion once Plaintiff has filed his amended complaint.

### C. State–Law Claims Against the Suffolk County Sheriff's Department and Cabral, Horgan, and Gatzunis in Their Official Capacities

Plaintiff names the Sheriff's Department and all of the above-named Defendants in their official capacities in Counts I through VI. Defendants contend that Plaintiff's claims against them in their official capacities are either barred by sovereign immunity or otherwise fail as a matter of state law.

#### 1. Sovereign Immunity

 The Eleventh Amendment bars suits in federal court against unconsenting states.[33] Suits against state offi-

---

**27.** *Febus–Rodriguez,* 14 F.3d at 92. There must also be an "affirmative link" between the supervisor's actions or omissions and a subordinate's violation of a person's constitutional rights. *Id.*

**28.** *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994).

**29.** *See Alsina–Ortiz v. Laboy,* 400 F.3d 77, 81–82 (1st Cir.2005).

**30.** *Maldonado–Denis,* 23 F.3d at 582.

**31.** Compl. ¶ 25.

**32.** Presentment Letter.

**33.** *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

cers in their official capacities seeking damages are similarly barred by the Eleventh Amendment.[34] The Eleventh Amendment also bars suits in federal court against states and state officers alleging violations of state law, regardless of the form of relief sought.[35] Such suits against states and their officers in federal court are barred unless the state has waived its immunity. A state's waiver will be given effect "only where stated by the most express language or by such overwhelming implication as [will] leave no room for any other reasonable construction."[36] The Supreme Court has held, however, that a state's voluntary choice to remove an action to federal court may operate as a waiver of immunity.[37] The First Circuit has held that such waiver occurs only where the state has waived immunity from suit in state court but retained immunity in federal court and then attempts to take advantage of that immunity through removal.[38] Accordingly, "a state's removal will not effectuate a waiver in *all* cases, but, rather, only in those cases where removal confers a special advantage on the state."[39]

The remaining claims in this case are all based on Massachusetts law and sovereign immunity potentially bars suit against the Sheriff's Department and the other Defen-

dants in their official capacities. The County Defendants and Defendant Gatzunis voluntarily consented to this matter being removed to federal court.[40] Consequently, the availability of Eleventh Amendment immunity turns on the extent to which Defendants could have asserted immunity in state court.

### 2. *MTCA Claims*

Count I asserts negligence claims against the Sheriff's Department and the other Defendants in their official capacities pursuant to the MTCA. Defendants contend that the MTCA claims against them are subject to dismissal on two grounds. First, Defendants argue that the claims are barred by sovereign immunity. Second, County Defendants argue that the MTCA immunizes public employees from liability for injuries caused by their negligent conduct and that they constitute "public employees" within the meaning of the statute. Defendant Gatzunis argues that he is not the relevant public employer.

With regard to Defendants' first argument, sovereign immunity does not bar the MTCA claims to the extent that Defendants would be subject to suit in a Massachusetts court. The Commonwealth did not waive its Eleventh

---

34. *Edelman v. Jordan*, 415 U.S. 651, 668–69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945).

35. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

36. *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 305, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) (alteration in original) (internal quotation marks and citations omitted).

37. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617, 624, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).

38. *Bergemann v. R.I. Dep't of Envtl. Mgmt.*, 665 F.3d 336, 341 (1st Cir.2011) (holding that while *Lapides'* language was broad, its holding was limited "to the 'context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings'" (quoting *Lapides*, 535 U.S. at 617, 122 S.Ct. 1640)).

39. *Santiago v. Keyes*, 839 F.Supp.2d 421, 427 (D.Mass.2012) (citing *id.*).

40. *See* Notice of Removal [# 1].

Amendment immunity in federal court by enacting the MTCA.[41] The statute does, however, waive sovereign immunity from certain tort actions against the Commonwealth and other public employers in state courts.[42] As discussed above, a state may waive its Eleventh Amendment immunity by its litigation conduct, including the voluntary removal to federal court of claims as to which it has waived state-law immunity. Because the Sheriff's Department and the other Defendants voluntarily removed this case to federal court, they do not enjoy Eleventh Amendment immunity against any MTCA claims they would be subject to in state court.[43]

This leaves the question of whether Defendants would be subject to Plaintiff's MTCA claims in state court. While the MTCA authorizes certain negligence actions against public employers, it simultaneously "shields public employees from personal liability for negligent conduct." [44] The definition of "public employer" includes "the commonwealth and any county," as well as "any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof . . . which exercises direction and control over the public employee." [45] The MTCA defines "public employees" to include "elected or appointed, officers or employees of any public employer." [46]

Defendant Gatzunis argues that Plaintiff's MTCA claims against him must be dismissed because, as the Massachusetts Commissioner of Public Safety, he is not the public employer of the Suffolk County Sheriff's Department's employees. Gatzunis argues that he exercises no direction or control over the employees whose actions are relevant here. This court agrees with Gatzunis. There is no indication from the pleadings that Gatzunis is the employer of any of the Defendants whose actions are challenged here. Moreover, it seems intuitive that the public employer of the Sheriff's Department employees is the Sheriff's Department. As such, Count I is dismissed against Gatzunis.

As to the Sheriff's Department itself, the County Defendants' brief offers no argument that the Sheriff's Department is not the relevant public employer for purposes of this suit. Because the County Defendants do not argue that the Sheriff's Department is not the relevant public employer, and public employers are subject to tort liability in state court under the MTCA, Count I survives against the Sheriff's Department and the Eleventh Amendment does not bar this claim.

Finally, the County Defendants argue that Cabral and Horgan are public employees under the plain meaning of the MTCA.[47] In fact, the Parties agree that

---

**41.** *Caisse v. DuBois,* 346 F.3d 213, 218 (1st Cir.2003); *see also Rivera v. Massachusetts,* 16 F.Supp.2d 84, 87 (D.Mass.1998) ("The Commonwealth has expressly exercised its prerogative to waive its sovereign immunity only insofar as claims are brought against it in its own judicial fora.").

**42.** Mass. Gen. Laws c. 258, § 2; *Rivera,* 16 F.Supp.2d at 87.

**43.** *See Santiago,* 839 F.Supp.2d at 429–30 (holding that the Massachusetts Department

of State Police had waived Eleventh Amendment immunity against MTCA claims by taking actions indicating it wished to be in federal court).

**44.** *Caisse,* 346 F.3d at 218.

**45.** Mass. Gen. Laws c. 258, § 1.

**46.** *Id.*

**47.** Mem. Law Supp. Defs.' Mot. Dismiss [# 15], 6.

Cabral and Horgan, in their official capacities, are public employees within the meaning of the MTCA.[48] The MTCA "categorically protects public employees acting within the scope of their employment from liability for 'personal injury or death' caused by their individual negligence."[49] As public employees, Cabral and Horgan enjoy immunity from Plaintiff's MTCA claims. Because Plaintiff does not suggest Cabral and Horgan were acting in any capacity other than as public employees, the claims in Count I against Horgan and Cabral must be dismissed.[50]

### 3. MCRA Claims

██ Count II of the Complaint asserts claims pursuant to the MCRA, M.G.L. c. 12, §§ 11H and I. To state a claim under the MCRA, a plaintiff must prove that the exercise of his state or federal constitutional rights was interfered with by a "person" within the meaning of the statute by means of threats, intimidation, or coercion.[51] The Sheriff's Department, Defendants Cabral and Horgan in their official capacities, and Defendant Gatzunis in his official capacity are immune from suit under the MCRA. As with § 1983, the Commonwealth and its agencies are not "persons" within the meaning of the MCRA.[52] Because Plaintiff's MCRA claims against Defendants in their official capacities are tantamount to claims against the Commonwealth itself, Defendants enjoy immunity against these claims.[53] Consequently, Count II must be dismissed against the Sheriff's Department, Cabral, Gatzunis, and Horgan to the extent he is sued in his official capacity.

### 4. Intentional Torts and Common–Law Negligence

Count III of the Complaint asserts claims for intentional infliction of emotional distress. Count VI asserts claims for common-law assault and battery. Finally, Count IV advances common-law negligence claims. Plaintiff brings all of these claims against the Sheriff's Department and the other Defendants in their official capacities.

██ As discussed, the MTCA waives sovereign immunity for certain tort claims against public employers in Massachusetts state courts. The MTCA is not a complete waiver of sovereign immunity, however, and section 10 of the statute delineates a number of areas in which the Commonwealth has retained immunity. This immunity is applicable to suits against state officers in their official capacities.[54] Section 10(c) of the MTCA provides that the Commonwealth retains immunity as to "any claim arising out of an intentional tort, including assault, battery, ... [or] intentional mental distress."[55] Because the

---

**48.** *See* Defs.' Mem. Law [# 37]; Pl.'s Response [# 38].

**49.** *Maraj v. Massachusetts,* 836 F.Supp.2d 17, 31 (D.Mass.2011) (quoting Mass. Gen. Laws c. 258, § 2); *see also Fantini v. Salem State Coll.,* No. 05–12348–RWZ, 2007 WL 922883, at *6 (D.Mass. Mar. 26, 2007) (recognizing that the MTCA "immunizes public employees against liability" for injuries resulting from their negligent conduct while acting within the scope of their employment).

**50.** Because Horgan is also a public employee in his individual capacity, Count I is also dismissed to the extent it names Horgan in his individual capacity.

**51.** *Williams v. O'Brien,* 78 Mass.App.Ct. 169, 936 N.E.2d 1, 4 (2010).

**52.** *Id.; Howcroft v. City of Peabody,* 51 Mass. App.Ct. 573, 747 N.E.2d 729, 744–45 (2001).

**53.** *See Howcroft,* 747 N.E.2d at 747.

**54.** *Id.*

**55.** Mass. Gen. Laws ch. 258, § 10(c).

Commonwealth and its officers retain state-court immunity against the intentional tort claims Plaintiff asserts here, Counts III and VI are barred by Eleventh Amendment immunity and must be dismissed as to the Sheriff's Department and the other Defendants in their official capacities.

██ The Sheriff's Department and the other Defendants in their official capacities are also immune from Plaintiff's common-law negligence claims. Section 2 of the MTCA states:

> Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances.... [56]

Section 2 also states, however, that the "remedies provided by this chapter *shall be exclusive* of any other civil action or proceeding by reason of the same subject matter against the public employer or, the public employee or his estate whose negligent or wrongful act or omission gave rise to such claim." [57] Plaintiffs may not assert common-law negligence claims to avoid compliance with the MTCA.[58] Plaintiff's Complaint does not suggest that Defendants were acting in any capacity other than of public employees, and Count IV must thus be dismissed against the Sheriff's Department and the other Defendants in their official capacities.

### D. *State–Law Claims Against Horgan in His Individual Capacity*

Plaintiff's Complaint names only Defendant Horgan in his individual capacity. While Plaintiff's claims are largely barred against Horgan in his official capacity on immunity grounds, Plaintiff can potentially still assert his claims against Horgan in his individual capacity. The Complaint, however, fails to distinguish between the actions of the various Defendants and also fails to allege sufficient facts to make out plausible claims against Horgan.

#### 1. *Common–Law Negligence Claim*

██ Plaintiff's common-law negligence claims against Horgan in his individual capacity must be dismissed. As already discussed, the MTCA's exclusivity provision bars common-law negligence actions against public employers and employees. Horgan is a public employee of the Sheriff's Department. Because Horgan is a public employee and Plaintiff's Complaint does not suggest Horgan was not acting within the scope of his employment, Count IV is dismissed against Horgan in his individual capacity.

#### 2. *MCRA Claim*

██ As explained, in order for a plaintiff to make out a MCRA claim, he must show that "persons" within the meaning of the statute interfered, or attempted to interfere, with his enjoyment of federal or state constitutional rights by means of threats, intimidation, or coercion.[59] Horgan, in his individual capacity, constitutes a "person" for purposes of the MCRA. Regardless of whether Plaintiff has pleaded sufficient facts to make out a constitutional violation, however, Plaintiff's Complaint is devoid of any factual allegations suggesting that Horgan threatened,

**56.** *Id.* § 2.

**57.** *Id.* (emphasis added).

**58.** *See Tavarez v. Essex Cnty.*, 49 Mass.App.Ct. 1113, 735 N.E.2d 1269, at *1 (Mass.App.Ct. 2000).

**59.** *Williams*, 936 N.E.2d at 4.

coerced, or intimidated Plaintiff in the exercise of his constitutional rights. For this reason, Count II is dismissed as to Defendant Horgan in his individual capacity.

### 3. *Intentional Tort Claims*

Finally, this court must consider the sufficiency of the factual allegations contained in Plaintiff's Complaint with respect to Counts III and VI. First, Count III asserts a claim for intentional infliction of emotional distress against Horgan in his individual capacity. In order to make out a claim for intentional infliction of emotional distress, Plaintiff must prove:

(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.[60]

While Plaintiff has pleaded sufficient facts to plausibly show that he has suffered severe emotional distress, Plaintiff's Complaint fails to allege sufficient facts to plausibly infer that Horgan intended to cause Plaintiff emotional distress or should have known such distress was the likely result of his conduct. Indeed, the factual allegations in the Complaint simply state that "defendants" told Plaintiff he had HIV and administered HIV medication to him. This is insufficient. There is no indication that Horgan was personally involved with Plaintiff's medical treatment or otherwise took any action with respect to Plaintiff. Consequently, Count III is dismissed as to Horgan in his individual capacity.

The Complaint similarly fails to allege sufficient facts to make out a plausible claim for assault or battery against Horgan. These claims require Plaintiff to show that Horgan intentionally attempted to batter Plaintiff[61] and that Horgan intentionally and unjustifiably used force against Plaintiff.[62] There is simply no factual basis in the Complaint to support these claims. Count VI is therefore dismissed as to Horgan in his individual capacity.

### E. *Plaintiff's Request to File an Amended Complaint*

In his Opposition, Plaintiff requests leave to file an amended complaint to supplement his factual allegations, to the extent that this court may find them wanting. This court will treat this request as a motion to file an amended complaint. Pursuant to Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading with leave of the court. A court should freely give leave to amend when justice so requires.[63] In this case, Plaintiff raises claims relating to troubling events at the SCHOC. Plaintiff's claims against the medical professionals have been referred to a Massachusetts medical malpractice tribunal for further evaluation.[64] Plaintiff's Complaint raises many claims that are barred by immunity and many of his other claims are not supported by factual allegations sufficient to state plausible claims. Nonetheless, Plaintiff may be able

---

**60.** *Howell v. Enter. Publ'g Co.*, 455 Mass. 641, 920 N.E.2d 1, 28 (2010) (internal punctuation and citations omitted).

**61.** *Dahms v. Cognex Corp.*, No. 993192, 2000 WL 33170952, at *5 (Mass.Super.Ct.2000).

**62.** *Id.*

**63.** Fed.R.Civ.P. 15(a)(2).

**64.** *See* Order [# 33].

to allege additional facts that will allow his supervisory liability claim against Horgan to survive dismissal. Because Plaintiff seeks leave from this court prior to the entry of dismissal and allowing Plaintiff to amend his complaint will not prejudice Defendants, this court will grant Plaintiff leave to file an amended complaint with respect to his § 1983 claim against Horgan.[65]

## IV. *Conclusion*

For the foregoing reasons, Defendant Gatzunis's *Motion to Dismiss* [# 16] is ALLOWED in its entirety. Additionally, County Defendants' *Motion to Dismiss* [# 14] is ALLOWED as to Counts II, III, IV, and VI, as well as Count I to the extent it raises MTCA claims against Horgan and Cabral in their official and individual capacities, and Count V to the extent it raises § 1983 claims against Defendants in their official capacities. County Defendants' *Motion to Dismiss* [# 14] is DENIED as to Count I to the extent that it states an MTCA claim against the Sheriff's Department. Defendants' *Motion to Dismiss* [# 14] is also DENIED WITHOUT PREJUDICE as to Count V to the extent it raises a § 1983 claim against Horgan in his individual capacity. Defendants may renew their *Motion to Dismiss* as to Count V after Plaintiff has had an opportunity to file his amended complaint.

AN ORDER HAS ISSUED.

---

65. Plaintiff's other claims against the official capacity defendants are barred by immunity, and additional factual allegations will not allow Plaintiff to state plausible claims against them. With respect to the other claims against Horgan in his individual capacity, Plaintiff's Opposition fails to address any of the County Defendants' arguments supporting dismissal. Instead, Plaintiff focuses solely on his deliberate indifference claim. *See* Pl.'s Mem. Law Opp'n Defs.' Mots. Dismiss [# 28]. Because Plaintiff has failed to plead any facts supporting his MCRA and intentional tort claims against Horgan, his negligence claim is barred by the MTCA, and Plaintiff fails to address those claims in his Opposition, those claims are dismissed with prejudice.