ROBERT WILLIAMS vs. STEVEN J. O'BRIEN[1] & others.[2]

No. 09-P-1916.

Norfolk. June 3, 2010. - October 25, 2010.

Present: McHUGH, MILLS, & GRAINGER, JJ.

*Correction Officer. Massachusetts Civil Rights Act. Civil Rights,* Immunity of
public official. *Governmental Immunity. Administrative Law,* Exhaustion of
remedies. *Negligence,* Correctional facility.

In a civil action brought by an inmate against the Commonwealth, the prison
in which he was incarcerated, and several correction officers for injuries he
suffered as the result of being stabbed by another inmate, the judge properly
granted summary judgment in favor of the Commonwealth and the prison
on the inmate's claim of a violation of the Massachusetts Civil Rights Act,
G. L. c. 12, §§ 11H and 11I, where the Commonwealth, including its
agencies, is not a "person" subject to suit under the statute [172-173];
however, the judge erred in granting summary judgment in favor of the
individual defendants, where, drawing all inferences in favor of the inmate,
the individual defendants were named in their personal capacities, and
where the causal connection between the stabbing and the individual
defendants' refusal to heed the inmate's repeated pleas not to be housed
with the other inmate was a legitimate subject for dispute [173-174];
further, the judge erred in concluding that the inmate had failed to satisfy
the requirement of exhaustion of administrative remedies [174-175].

In a civil action brought by an inmate against the Commonwealth, the prison
in which he was incarcerated, and several correction officers for injuries he
suffered as the result of being stabbed by another inmate, the judge erred
in granting summary judgment in favor of the defendants on the inmate's
claims of negligence, where the defendants had a duty to protect the
inmate from unreasonable harm while in their custody and the complaint
alleged deliberate acts that placed the inmate in jeopardy. [175-176]

CIVIL ACTION commenced in the Superior Court Department on
January 26, 2009.

The case was heard by *Thomas F. McGuire, Jr.,* J., on a mo-
tion for summary judgment.

---

[1]Superintendent of Old Colony Correctional Center (Old Colony).

[2]Old Colony shift commander captain Philip Poirier and director of classi-
fication Carol Lawton; Old Colony; and the Commonwealth.

*Frank R. Saia* for the plaintiff.

*Suzanne Caravaggio* for the defendant.

GRAINGER, J. The plaintiff, Robert Williams, was incarcerated at Old Colony Correctional Center (Old Colony) beginning in September, 2005. He appeals the dismissal on summary judgment of his complaint seeking damages against the Commonwealth, the prison and several correction officers for injuries he suffered as the result of being stabbed by another inmate. We recite the allegations of the complaint and record on summary judgment, which describe troubling and unprofessional conduct on the part of correction officers, in some detail.

*Background.* Viewed in the light most favorable to Williams, see *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), the record on summary judgment establishes the following: From the time of his arrival at Old Colony, Williams repeatedly informed correction officers and prison administrators that he believed his life was in danger because he had been labeled a "snitch" or informer. Among those to whom he made these statements were the intake processing officer and the director of classification, the defendant Carol Lawton. Williams asserted specifically that inmate Mark Thomas, a known gang leader, had put out a contract for his death and that inmate Michael Holiet, who had previously stabbed another inmate, was slated to be his executioner. He stated this to the defendant Captain Philip Poirier, also complaining that prison staff, including an Officer Clarence,[3] were denouncing him as a "snitch" in the presence of other inmates.

Within a few days of his complaint to Captain Poirier, Williams was told by Clarence that he would be placed in a cell with Holiet whether he liked it or not. The officer continued, "You are a snitch, now move away from my desk," and then yelled out in front of several inmates, "I will personally make sure you and [Holiet] are sent to unit A-4 and placed in a cell together." Williams again complained to Captain Poirier, this time also reporting the remarks made by Clarence; Poirier repeated that he would take care of it.

Wholly unsatisfied that he would survive his incarceration,

---

[3]This officer, also intermittently referred to as "Officer Clearance" in the record, is not a named defendant.

Williams approached Superintendent Brady and explained the danger facing him. Brady responded to Williams's complaint by ordering the prison assignment officer, the defendant Steven O'Brien, to give Williams the next "runner's" job in the prison's orientation unit[4] and to assign him to a single cell.

Shortly after this incident, O'Brien succeeded Brady as superintendent and, exactly as Clarence had promised, Williams was moved into a cell in unit A-4 with Holiet. Williams was told by O'Brien that because Brady had since been transferred, O'Brien would not honor Brady's previous order that Williams be placed in a single cell.

In August of 2007, almost two years after his arrival at Old Colony, Williams filed a grievance, number 28777, asserting that correction officers were intentionally putting him in harm's way "for personal satisfaction and display of authority to other inmates," and ignoring the "enemy situation" (the threat posed by inmates Thomas and Holiet) about which he previously had spoken to prison officials. The grievance reflects Williams's confusion as to why, in lieu of the single cell he was promised, officers would transfer him to unit A-4, subsequently characterized in Williams's affidavit as the most dangerous unit in Old Colony. Specifically, the grievance recited that Williams had advised the defendants that he needed to be moved out of Old Colony. Under the grievance form section entitled "Provide your Requested Remedy," Williams wrote "Removal from this facility."

Six months later, in February of 2008, Williams filed a second grievance, numbered 32300 and marked "Emergency." In this second grievance Williams advised the defendants of a threatening interaction with a prison officer who told Williams that he was being punished because he "ran [his] mouth." According to Williams the officer then attempted to egg Williams on, telling him: "Do something, your door is open. Do something!" Williams asserted that this incident put him in harm's way; he again concluded with a request that he be transferred from Old Colony.

In late February, Williams and Holiet had a serious argument during which Holiet banged and kicked the cell door, and

---

[4]Williams asserts on appeal, without contradiction by the defendants, that the runner's job would have entitled him to a single cell.

violently called Williams a "snitch." Officials finally moved Holiet from Williams's cell and demanded that the two avoid contact with each other, but they did not remove Williams from the prison. Evincing increasing fear and concern after the altercation with Holiet, Williams wrote to Captain Poirier on February 29, 2008. He specifically named both Holiet and Thomas as a source of danger, stating:

> "[M]y life would be in danger not only in this facility, but especially in this unit. . . . Sir, I am requesting to be removed from this facility for the third time. While you are considering my request, will you at least move me out of A-4?"

Less than two weeks later, on March 11, 2008, Holiet attacked Williams in the prison's computer room. Holiet stabbed Williams in the face, head, neck and back with a shank, or homemade knife. Williams alleges that Holiet was able to bring the shank into the space where the attack occurred because the defendants had removed a metal detector from the checkpoint covering that area. Williams required eighty-seven stitches and numerous staples for his wounds, and spent five months in the prison health unit subsequent to his release from the hospital. His claims of injury include that he was almost killed, suffered permanent nerve damage, and required the eighty-seven stitches.

Some five months after the stabbing, in August of 2008, Williams was transferred from Old Colony. At no time prior to his transfer did Williams receive any official response to his grievances. In January, 2009, Williams initiated the present action alleging negligence and a violation of his civil rights in the defendants' failure to heed his repeated pleas for a transfer out of Old Colony.

*Discussion.* The second amended complaint, the one here at issue, asserts in count one a violation of the Massachusetts Civil Rights Act (MCRA), G. L. c. 12, §§ 11H and 11I, and in count two claims of negligence against all of the defendants. We consider each in turn.

1. *Violation of civil rights.* To establish a claim under the MCRA the plaintiff must prove that "(1) [his] exercise or enjoyment of rights secured by the Constitution or laws of either the

United States or of the Commonwealth, (2) [has] been interfered with, or attempted to be interfered with," by a person within the meaning of the act, and "(3) that the interference or attempted interference was by threats, intimidation or coercion." *Swanset Dev. Corp.* v. *Taunton*, 423 Mass. 390, 395 (1996) (citations omitted). The judge correctly dismissed this claim against the Commonwealth on summary judgment because the Commonwealth, including its agencies, is not a "person" subject to suit pursuant to G. L. c. 12, § 11H. See *Howcroft* v. *Peabody*, 51 Mass. App. Ct. 573, 592 (2001), citing *Commonwealth* v. *ELM Med. Labs., Inc.*, 33 Mass. App. Ct. 71, 74-80 (1992).[5] However, with respect to the individual defendants, the judge made two determinations which we conclude were premature in the context of summary judgment.

The first was that the individual defendants were not sued in their personal capacities. It is well established that the MCRA incorporates the standard of immunity for public officials developed under 42 U.S.C. § 1983, and accordingly "public officials are not liable under the [MCRA] for their discretionary acts, unless they have violated a right under Federal or State constitutional or statutory law that was 'clearly established' at the time." *Duarte* v. *Healy*, 405 Mass. 43, 47 (1989), citing *Anderson* v. *Creighton*, 483 U.S. 635, 639-640 (1987). Recognizing this principle, our review of the record reveals that, while the plaintiff identified the defendants' titles and duties at the prison, he did not specify in which capacity — personal or official — the individual defendants were named. Accordingly, for purposes of summary judgment, where we draw all inferences in favor of the nonmoving party, *DiPietro* v. *Sipex Corp.*, 69 Mass. App. Ct. 29, 30 (2007), dismissal on this basis was improper.

Second, the judge found that there was "no evidence that these three individuals did anything to Williams by way of threats, intimidation or coercion" as the MCRA requires. It is true that the great majority of threats and intimidation alleged in the complaint and summary judgment materials are ascribed to Officer Clarence, who is not a defendant, and to another officer,

[5]The second amended complaint also contains one passing reference to the "U.S. Constitution." The State defendants are equally immune under the Federal Civil Rights Act. See *Will* v. *Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

who is unnamed. However, the materials also show that the defendants forced Williams to occupy a cell with Holiet. Impliedly recognizing this to be coercion, the defendants — who had been told that Holiet intended to kill Williams — emphasize that the stabbing took place elsewhere and argue that this fact precludes any causal connection between their conduct and Williams's injuries. We reject this argument. The causal connection between the stabbing and the defendants' refusal to heed Williams's repeated pleas not to be housed with Holiet is a legitimate subject for dispute. The extent to which close exposure to his victim induced or motivated Holiet's attack and led to Williams's injuries is a determination for the fact finder. It is undisputed that a heated physical confrontation occurred in the cell between Holiet and Williams in the weeks before the attack. The fact that Holiet was not successful in causing grievous harm on that occasion does not eliminate the possibility that the stabbing in the computer room was a result, or even a continuation, of the first encounter in the cell that Williams was forced to share with his attacker. Shortly after the confrontation in the cell, Williams wrote to Poirier: "That incident between [Holiet] and I did not just happen and I am sure it's not over." He went on to request removal from the facility "for the third time," and temporary removal to a different cell while his request was being considered. Accordingly, this issue is not amenable to summary judgment.

2. *Exhaustion of administrative remedies.* It is undisputed that Williams filed two grievances before the stabbing. The judge considered one of these and disregarded the other.[6] The judge concluded that Williams failed to satisfy the requirement of exhaustion of administrative remedies for two reasons: (1) the prestabbing grievance related to the defendants' refusal to put Williams in a single cell, and (2) Williams proffered no causal connection between that refusal and his injuries. We disagree on both counts. As stated above, the relationship between the stabbing and the close physical proximity in which the defendants had previously placed Williams with his eventual attacker is a factual question to be determined at trial. Second, both prestab-

---

[6]The second prestabbing grievance (number 32300), disregarded by the judge, did not complain about Holiet or Thomas but did request "[r]emoval from this facility," after describing actions by a guard Williams asserted had placed him in "a dangerous situation."

bing grievances stated that Williams considered his life to be in danger and requested that he be transferred to another facility. Williams's affidavit also referred specifically to other statements Williams had made earlier not only putting the defendants on notice that he was in danger, but identifying the specific source of that danger as two other inmates at Old Colony, Thomas and Holiet. His statements to the defendants thus sought relief (removal from facility) which would have prevented the attack.[7]

We determine as well that our consideration of the letter dated February 29, 2008, is not precluded by *Ryan* v. *Pepe*, 65 Mass. App. Ct. 833, 837-838 (2006), as the judge concluded below. Unlike that case, in which a letter was the sole evidence of any grievance on which an exhaustion of remedies could be claimed, this case includes two formal grievances as well as reference to innumerable conversations and the (less formal) written complaint in letter form.

The defendants chose to ignore these complaints, not only denying Williams a transfer but also deliberately placing him in a cell with Holiet. While they can legitimately raise the location of the stabbing as a fact pertinent to causation, they are not entitled to summary judgment even if the grievances were read incorrectly as limited to requesting a single cell.[8]

3. *Negligence.* The Commonwealth has waived sovereign immunity for claims covered by the Massachusetts Tort Claims Act including, here pertinent, "the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." G. L. c. 258, § 2, added by St. 1978, c. 512, § 15. Here, again, the judge relied on a determina-

---

[7]Even if the defendants can credibly claim that they failed to understand the nature of Williams's previous requests, his letter of February 29, 2009, to Poirier left no room for doubt: "*Sir I am requesting to be removed from this facility for the third time.*" The request for a single cell was explicitly a secondary plea for help: "While you are considering my request, will you *at least* move me out of A-4?" (emphasis added).

[8]The defendants' allusion to Williams's failure to appeal the "denial" of his grievances to the superintendent, see 103 Code Mass. Regs. § 491.12 (2001), is unavailing since they never provided him with a written response pursuant to 103 Code Mass. Regs. § 491.10 (2001). The defendants were required to do so "within 180 days from the date of filing" to invoke the defense of exhaustion. See G. L. c. 127, § 38F, inserted by St. 1999, c. 127, § 133.

tion — one which is faulty for the reasons elaborated above — that the criminal conduct of Williams's fellow inmate could not be causally connected to acts or omissions by the defendants.

The duty of these defendants to protect Williams against unreasonable harm while in their custody is a long-recognized and fundamental tenet of the law of negligence. It specifically applies to the "Risk of Intentional or Criminal Conduct . . . [w]here the actor has brought into contact or association with the other a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct, under circumstances which afford a peculiar opportunity or temptation for such misconduct." Restatement (Second) of Torts § 302B comment e (1965). And it extends also to "the acts of third persons, whether they be innocent, negligent, intentional, or even criminal." *Id.* at § 314A comment d. The defendants assert that at most they may be charged with negligence and omission when acting in their official scope of their duties and that such conduct is protected. See G. L. c. 258, § 10(*j*). The allegations, however encompass deliberate acts that placed Williams in jeopardy including placing him in a cell with Holiet, calling him a "snitch" in public, and other threatening behavior.

The defendants point to the basic principle of statutory authority in derogation of the common law and characterize the complaint and supporting materials as deficient under the standards of G. L. c. 258, § 10(*j*), which provides immunity for negligence and omissions in the performance of official duties when actual harm is caused by a third person. We do not agree that this statute avails the defendants. The allegations recite deliberate acts, including calling Williams a "snitch" in front of other inmates and purposefully placing him in a cell with Holiet. Section 10(*j*) does not apply to "any claim based upon intervention of a public employee which . . . places the victim in a worse position than he was in before the intervention." G. L. c. 258, § 10(*j*)(2), added by St. 1978, c. 512, § 15.

We note as well that Williams alleges that the defendants removed a metal detector which would have detected Holiet's possession of a shank before he could use it.[9] This claim, too, describes a positive act.

---

[9] The record does not reveal whether the metal detector had been removed

*Conclusion.* The entry of summary judgment for the defendants is affirmed with respect to the assertions of civil rights violations by the Commonwealth, its agencies and employees to the extent they have been named in their official capacities. The entry of summary judgment is vacated with respect to all other claims and the case is remanded for further proceedings consistent with this opinion.[10]

*So ordered.*

---

much earlier or very close in time to the attack; we therefore cannot consider the extent to which this act was so closely related in time to the stabbing that a grievance could be found futile, and summary judgment is therefore also not available on this issue. See *Ciszewski* v. *Industrial Acc. Bd.,* 367 Mass. 135, 140-141 (1975), and cases cited.

[10]The record as originally submitted on appeal contained references to the defendants' also having locked Williams and Holiet together in the back of the same transport vehicle to attend criminal proceedings related to the stabbing, which resulted in further allegations of assaults against Williams by Holiet. It also referred to additional grievances filed after the stabbing and other materials not included in the record below. We allowed the defendants' motion, joined by the plaintiff, to strike these references. Our allowance of the motion to strike is without prejudice to any consideration on remand of motions to amend the complaint or enlarge the record below.