KENNEDY vs. ABRAMSON, 100 Mass. App. Ct. 775

 
 GILES KENNEDY vs. JOEL C. ABRAMSON, trustee, [Note 1] & others. [Note 2]

100 Mass. App. Ct. 775
 December 14, 2021 - March 17, 2022

Court Below: Superior Court, Barnstable County
Present: Green, C.J., Rubin, & Massing, JJ.

 

Negligence, Causation, Defective product, Res ipsa loquitur, Safety inspection, Standard of care. Evidence, Inference.

In a negligence action arising from injuries suffered by the plaintiff when he was dining at a restaurant and his chair collapsed, the judge erred in granting summary judgment in favor of the defendant owners of the restaurant, where the record presented a number of material disputed factual issues (including whether the restaurant provided the plaintiff with a defective and unsafe chair, whether the defect could have been detected with reasonable inspection, and whether reasonable inspection was made), and where the circumstances of the case presented a jury question under the doctrine of res ipsa loquitur. [777-782]

CIVIL ACTION commenced in the Superior Court Department on August 24, 2018.

 The case was heard by Mark C. Gildea, J., on a motion for summary judgment.

 James C. Crowley, Jr., for the plaintiff.

 Dragan M. Cetkovic for the defendants.

 MASSING, J. The plaintiff, Giles Kennedy, was having lunch on the outdoor deck of Sundancers restaurant in Dennis when his plastic chair collapsed beneath him. Almost three years later, he sued the defendant owners of the restaurant, two real estate trusts and Horsefoot Harbor, Inc. (collectively, defendants or Sundancers), for negligence. A Superior Court judge allowed the defendants' motion for summary judgment on the grounds that the plaintiff had not presented any evidence that Sundancers was negligent or expert testimony that the chair was defective. The plaintiff argues that the issue of the defendants' negligence presented a jury question under the doctrine of res ipsa loquitur,

 Page 776 

 which would permit a jury to infer that the chair would not ordinarily have collapsed unless the defendants were negligent. Because our case law plainly permits a jury to draw such an inference, we reverse.

 Background. [Note 3] On a late summer afternoon in 2015, the plaintiff and four of his friends arrived at the restaurant for lunch and seated themselves at a table on the outdoor deck. Shortly after a server took the group's order, the plaintiff pushed his plastic chair away from the table to give himself more room. As he slid the chair back, one of its rear legs folded in half and the chair collapsed, throwing him backwards onto the deck. The plaintiff, who weighed about 190 pounds, managed to pull himself up, get another chair, and finish his lunch. He told the server what had happened, and the server reported the accident to the restaurant's management.

 After the plaintiff and his friends finished their meals, the plaintiff went inside the restaurant and told the restaurant's manager, Gary Abramson, [Note 4] about the accident. He also warned Abramson that other chairs on the deck might be faulty and said something to the effect that Sundancers should "look after" the broken chair. Abramson apologized and offered to reduce the plaintiff's bill. The plaintiff declined the offer and paid the bill; he was in pain and just wanted to leave.

 Five months after the accident, and again three months later, the plaintiff, through counsel, sent claim notices to Sundancers, giving his name and the date of the accident, but not mentioning the circumstances of the accident or the chair. He filed the present complaint more than two years after the second claim notice, alleging, without mentioning any details, that "he was injured as a result of the presence of one or more dangerous/defective conditions."

 By the time of discovery, Sundancers could not locate personnel records or any incident reports from the relevant period. The defendants were able, however, to provide the names of nine employees believed to have been working at the restaurant around the time of the accident, five of whom the plaintiff deposed.

 Page 777 

 The defendants were also unable to produce the chair in question or to explain what had happened to it following the accident. There was evidence that Sundancers replaced all the deck chairs at the same time and that the chairs in use at the time of the accident had been purchased four years before the accident. The chairs were stored outside from roughly May until November each year. Two restaurant employees and one of the plaintiff's friends testified that the deck chairs were made of thick or hardened plastic. The plaintiff described his chair as a "domestic type" that was "fit for the dump only." Employees also testified that the general practice at the restaurant was to wipe down the deck chairs at the open and close of business each day and to notify the manager if any of the chairs appeared defective. Sundancers was not able to identify which employees, if any, wiped down the deck chairs the morning of the accident or the previous night. Neither the plaintiff nor any of his companions noticed anything abnormal about the condition of the plaintiff's chair prior to the accident.

 Discussion. "To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Halbach v. Normandy Real Estate Partners, 90 Mass. App. Ct. 669, 671 (2016), quoting Jupin v. Kask, 447 Mass. 141, 146 (2006). The plaintiff may rely on circumstantial evidence to prove the elements of a negligence claim. See Wilson v. Honeywell, Inc., 409 Mass. 803, 807-808 (1991); Omni Flying Club, Inc. v. Cessna Aircraft Co., 366 Mass. 154, 160 (1974).

 "[S]ummary judgment is rarely granted in negligence actions." Zavras v. Capeway Rovers Motorcycle Club, Inc., 44 Mass. App. Ct. 17, 21 (1997). To be entitled to summary judgment, the defendants must demonstrate that, viewing the evidence in the light most favorable to the plaintiff, no reasonable jury could conclude that the plaintiff proved an essential element of his case. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Brandt v. Davis, 98 Mass. App. Ct. 734, 737 (2020); Khalsa v. Sovereign Bank, N.A., 88 Mass. App. Ct. 824, 829-830 (2016). We review de novo the motion judge's decision to grant summary judgment. See Brandt, supra.

 The defendants plainly "owed to the plaintiff, a business visitor, the duty to exercise reasonable care in maintaining the seat which he was expected to occupy in a reasonably safe condition." 

 Page 778 

 Couris v. Casco Amusement Corp., 333 Mass. 740, 741 (1956). And the evidence readily permits the inference that the chair provided to the plaintiff was defective. See Callahan v. New England Tel. & Tel. Co., 216 Mass. 334, 336 (1914). Sundancers would be entitled to summary judgment only if no jury could reasonably conclude that Sundancers committed a breach of its duty of care by failing to discover the defect before the chair collapsed under the plaintiff. See Briggs v. New Bedford Amusement Co., 315 Mass. 84, 85 (1943).

 In opposing the defendants' summary judgment motion, the plaintiff presented no direct evidence that Sundancers committed a breach of its duty of care. Rather, he relied on the doctrine of res ipsa loquitur to satisfy his burden of proof. "This doctrine permits a trier of fact to draw an inference of negligence in the absence of a finding of a specific cause of the occurrence when an accident is of the kind that does not ordinarily happen unless the defendant was negligent in some respect and other responsible causes including conduct of the plaintiff are sufficiently eliminated by the evidence." Enrich v. Windmere Corp., 416 Mass. 83, 88 (1993), citing Restatement (Second) of Torts § 328D(1)(a) (1965) (Restatement [Second]).

 In a decision issued two years before Enrich, the Supreme Judicial Court approved a jury instruction stating the standard for applying res ipsa loquitur in somewhat different terms, requiring the plaintiff to show that "the instrumentality causing the accident was in the sole and exclusive control and management of the defendant[,]" in addition to the accident being "of the type or kind that would not happen in the ordinary course of things unless there was negligence by the defendant" (quotations omitted). Wilson, 409 Mass. at 805. The court has not cited this alternative formulation since, nor explicitly repudiated it. Both the Restatement (Second), and the Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2010) (Restatement [Third]), agree that "exclusive control" is not an independent requirement. See Restatement (Second) § 328D comment g, at 161; Restatement (Third) § 17 comment b, at 185-186. Rather, the defendant's exclusive control over the instrumentality that caused the accident "is merely one way of proving [the defendant's] responsibility" and eliminating other possible causes. Restatement (Second) § 328D comment g. See Wilson, supra at 806 ("Even where

 Page 779 

 absolute exclusivity in use is not evident, a jury may be reasonable in finding that the defendant's control was sufficient to warrant an inference that the defendant was more likely responsible for the incident than someone else"). [Note 5]

 The doctrine of res ipsa loquitur has been applied to permit juries to infer the negligence in several cases involving collapsing chairs.

"The breaking of the chair when it was being properly used for the purpose for which it was furnished warranted the jury in inferring at least that it was defective and unsafe; and it could be found that its condition would have been discovered before the accident, by proper inspection. . . . In the absence of explanation to account for the breaking of the chair the jury reasonably could infer, under all the circumstances, including the nature of the break, that the failure to discover and remedy the defect was due to negligence on the part of the defendant."

Callahan, 216 Mass. at 336. See Couris, 333 Mass. at 741-742 (although "plaintiff offered no evidence as to the cause of the seat's collapse," jury could infer "that the unexplained collapse of the seat in question while being used in a normal manner was due either to defective construction or to lack of repair, and that its unsafe condition was more likely attributable to negligence on the part of the defendant than to some other cause"); Bell v. Dorchester Theatre Co., 314 Mass. 536, 537-538 (1943).

 "Res ipsa loquitur is an appropriate form of circumstantial evidence enabling the plaintiff in particular cases to establish the

 Page 780 

 defendant's likely negligence." Restatement (Third) § 17 comment a, at 184. As in any negligence case, the doctrine may be applied only if it is more likely than not that the defendant's negligence caused the accident. See Enrich, 416 Mass. at 87; Restatement (Third) § 17 comment d, at 189. See also Mullins v. Pine Manor College, 389 Mass. 47, 58 (1983) (to prove causation, "[a] plaintiff need only show that there was greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause" [quotation and citation omitted]). Thus, a jury could not reasonably infer negligence solely from the collapse of the plaintiff's chair if the evidence suggested that causes other than the defendants' negligence more likely brought about the accident. See Wilson, 409 Mass. at 807; Restatement (Third), supra (explaining that res ipsa loquitur does not apply if evidence concerning accident decreases probability of defendant's negligence below fifty percent). However, "[t]he plaintiff is not required to exclude every possible cause of the occurrence." Wilson, supra. Put another way, an inference of negligence from nothing more than the accident itself may be reasonable, but only if other evidence, such as timely and thorough inspection of the instrumentality causing the accident, does not render the inference unreasonable. See id.; Ragolsky v. Nurenberg, 211 Mass. 575, 576-577 (1912) (res ipsa loquitur inference impermissible where circumstances did not indicate defendants were negligent in failing to foresee and prevent accident).

 In similar cases, the absence of evidence that the defendants conducted reasonable inspections of the instrumentality permitted the inference of negligence arising from the mere occurrence of the accident. The Supreme Judicial Court's decisions in Callahan, 216 Mass. at 336, and Couris, 333 Mass. at 741-742, for example, do not mention any evidence that the defendants ever inspected the collapsed chairs in question. [Note 6] In Wilson, 409 Mass. at 805, 807, the defendant admitted that it did not routinely inspect the faulty garage door. In Bell, 314 Mass. at 537, although a witness for the defendant testified that the "maintenance man" was supposed to inspect the theater's seats every day, and the

 Page 781 

 witness believed "that inspection was made" on the day of the accident, an usher testified that immediately after the accident the broken iron brace that had attached the seat back looked worn, old, dirty, and rusty. The court held "that the jury rightly could infer that the failure to discover and remedy the defect was due to negligence on the part of the defendant." Id. at 538.

 Here, the summary judgment record included evidence that Sundancers conducted some inspections of the deck chairs. Employees typically wiped down the deck chairs at the end of each day and before opening for business the next day and were supposed to tell the manager if any of the chairs appeared defective. The record was devoid of any evidence of problems with or complaints about the chairs before or after the accident. Although the plaintiff's broken chair was not preserved, [Note 7] the only evidence that it, or any other deck chair, appeared old, weathered, or otherwise defective on the day of the accident was the plaintiff's hyperbolic statement that his chair was "fit for the dump only."

 While the evidence of inspection here is perhaps stronger than in similar res ipsa loquitur cases, it is not strong enough to establish, as a matter of law, that factors other than the defendants' negligence more likely caused the plaintiff's injury. Whether the defective condition of the chair "would have been disclosed by a reasonable inspection . . . [is] a question of fact for the jury." Brown v. Wong Gow Sue, 354 Mass. 646, 650 (1968). Indeed, even if the jury determined that looking for visible defects while wiping down the chairs constituted reasonable care, they would also have to credit the defendants' evidence suggesting that the plaintiff's chair passed inspection on the day in question. See Rose v. Melody Lane of Wilshire, 39 Cal. 2d 481, 488 (1952). Moreover, other out-of-State decisions have held that similar inspection evidence is not sufficiently strong to resolve the issue in the defendant's favor at the summary judgment stage. See, e.g.,

 Page 782 

 Judson v. Camelot Food, Inc., 104 Nev. 324, 326 (1988) (question of fact existed as to whether weekly inspections of bench were done in reasonable manner); Tuso v. Markey, 61 N.M. 77, 80-81 (1956) (jury's responsibility to weigh force of negligence inference from accident's occurrence against testimony that chair in question had been inspected two or three days before accident); Catalano v. Tanner, 23 N.Y.3d 976 (2014), rev'g 112 A.D.3d 1299 (2013) (reasonableness of inspection practices in dispute where defendant wiped chair daily but only inspected it "every month or so" during "major cleaning"); Husketh v. Convenient Sys., Inc., 295 N.C. 459, 462-463 (1978) (reasonableness of inspection practices in dispute where defendants cleaned stool weekly but had not inspected it for several months and previous cleanings had discovered two stools with loose seats). [Note 8]

 Because the record presents a number of material, disputed factual issues -- including whether Sundancers provided the plaintiff with a defective and unsafe chair, whether the defect could have been detected with reasonable inspection, whether reasonable inspection was made, and whether factors other than the defendants' negligence more likely caused the accident -- summary judgment should not have entered. Were this case to go to trial on the record before us, the jury would be permitted, but not required, to infer that Sundancers was negligent under the principles of res ipsa loquitur. [Note 9]

Judgment reversed.

FOOTNOTES
[Note 1] Of the AEA & JMB Realty Trust, doing business as Sundancers. 

[Note 2] Joel C. Abramson, as trustee of the J.M.G. Realty Trust, doing business as Sundancers, and Horsefoot Harbor, Inc. 

[Note 3] We recite the facts from the summary judgment record in the light most favorable to the plaintiff. See Juliano v. Simpson, 461 Mass. 527, 529-530 (2012). 

[Note 4] Gary Abramson was the treasurer of the corporate defendant, Horsefoot Harbor, Inc., which owned and operated Sundancers restaurant. His brother, defendant Joel Abramson, was the president of the corporation, and Joel's wife, Mary Abramson, was its secretary. 

[Note 5] The Restatement (Third) abandoned the "elimination of other possible causes" as an explicit element of res ipsa loquitur, permitting the fact finder to infer the defendant's negligence "when the accident causing the plaintiff's harm is a type of accident that ordinarily happens as a result of the negligence of a class of actors of which the defendant is the relevant member." Restatement (Third) § 17. "In some cases, the jury can derive its understanding of the circumstances that cause a particular type of accident from the general experience, common knowledge, and common sense of the community." Restatement (Third) § 17 comment c, at 186. Expert testimony may also provide a basis for the jury to invoke the doctrine. See Restatement (Third) § 17 comment c, at 186-187. However, where "neither common knowledge nor expert testimony [is] available to support the idea that the type of accident ordinarily happens because of the negligence of the defendant[,] . . . res ipsa loquitur can be found applicable only if the plaintiff has offered evidence tending to negate the presence of causes other than the defendant's negligence." Restatement (Third) § 17 comment d, at 187-188. 

[Note 6] Additionally, in Couris, 333 Mass. at 741, children were known to play on and break the seats in the theater, and a bolt from the broken seat was later found on the ground. This evidence strengthened the conclusion that reasonable care required routine inspections and that an inspection would have revealed a defect prior to the accident. 

[Note 7] As an alternative ground for opposing summary judgment, the plaintiff contended that as a sanction for the defendants' failure to preserve the chair, he should be entitled to an instruction on spoliation allowing the jurors to draw an adverse inference against the defendants. See Gath v. M/A-COM, Inc., 440 Mass. 482, 488 (2003); Mass. G. Evid. § 1102 (2021). The motion judge declined to deny summary judgment on spoliation principles. Because we reverse the judgment on other grounds, we need not address the merits of the spoliation issue. The plaintiff is free to raise the issue anew by appropriate motion prior to trial, the resolution of which shall be addressed to the sound discretion of the trial judge. See Scott v. Garfield, 454 Mass. 790, 798-799 (2009); Santiago v. Rich Prods. Corp., 92 Mass. App. Ct. 577, 580 (2017). 

[Note 8] Courts in other States have declined to apply the doctrine because the plaintiff had control of the chair and was in as good a position as the defendant to detect a defect, see, e.g., Reichenbach v. New Alamac Hotel Corp., 141 Fla. 797, 800-801 (1940); Kilgore v. Shepard Co., 52 R.I. 151, 154 (1932). See also Family Thrift, Inc. v. Birthrong, 336 Ga. App. 601, 605 (2016) (res ipsa loquitur unavailable because "through normal wear and tear, a chair -- especially a used chair donated to a thrift store -- can cease fulfilling its intended function and create a hazardous condition without negligence on the part of any individual" and chair not within defendant's exclusive control); Rose v. McMahon, 10 Mich. App. 104, 107 (1968) (res ipsa loquitur unavailable where it could not be assumed that plaintiff "did not contribute in any way to the collapse of the chair" and where plaintiff "made no showing that the defendant had either actual or constructive knowledge of any defect in the chair"). 

[Note 9] Properly applied, these principles do little more than assist the trier of fact in determining whether it is more likely than not that a defendant's negligence caused the injury. See Tuso, 61 N.M. at 82 ("[W]hat we said in dealing with a case where the prima facie case rested on circumstantial evidence is as true of the case where it arises from an application of the doctrine of res ipsa loquitur"). Indeed, some have questioned whether the doctrine performs any function at all, see Kahn & Lopatka, Res Ipsa Loquitur: Reducing Confusion or Creating Bias?, 108 Ky. L.J. 239, 258 (2019-2020) ("If res ipsa is a form of circumstantial evidence and raises merely an inference, the doctrine seems to have no independent function"), or, in the modern era of notice pleading and robust discovery, has outlived its purpose, see id. at 254 & n.84, citing Restatement (Third) § 17 comment i, at 193. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.