NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-805

ROBERT JAMES O'BRIEN[1]

vs.

KIRK RUSSELL & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Robert James O'Brien, brought this action on his own behalf and as personal representative of the estate of Stacey Fenton claiming negligence under the Massachusetts Torts Claims Act (MTCA), G. L. c. 258, against the Department of Children and Families (DCF), and violations of his constitutional rights under the Massachusetts Civil Rights Act (MCRA), G. L. c. 12, § 11I, against four DCF employees in their

---

[1] Individually and as personal representative of the estate of Stacey Fenton.

[2] Catherine Dwelly, Jacque Carl, Marcia Roddy, and the Department of Children and Families.

individual capacities.[3] As we discuss in more detail below, the claims arose from an unfortunate mistake. O'Brien was living with Fenton and her minor son in Fenton's home. The son was the subject of an open DCF case. In conducting a routine background check, DCF misidentified O'Brien as a person who had a history with DCF involving the sexual abuse of a child. O'Brien was asked to leave the home and was not permitted to return until four months later when, on further investigation, DCF acknowledged its error.

Prior to trial, the judge reserved the individual defendants' claims of qualified immunity under the MCRA and DCF's claim of immunity under the discretionary function exemption to the MTCA, G. L. c. 258, § 10 (b). The case proceeded and the jury returned a verdict in favor of O'Brien on his negligence claim against DCF, and on his MCRA claim against two of the four DCF employees.[4] The defendants then moved for judgment notwithstanding the verdict, or, in the alternative, judgment based on their immunity defenses. DCF also argued that

---

[3] O'Brien sought damages, attorney's fees, and a permanent injunction barring the defendants from taking or threatening to take Fenton's child if O'Brien occupies the home.

[4] Additional claims brought under the MCRA based on O'Brien's allegation of an unconstitutional seizure, and the estate of Stacey Fenton's allegation of an unconstitutional search, were not submitted to the jury and were later dismissed. O'Brien does not raise any issues with respect to these claims on appeal.

2

the economic loss rule barred recovery on O'Brien's negligence claim.[5]  The judge granted the motion, and O'Brien appeals from the ensuing judgment.  We affirm.[6]

Background.  We recite the facts that the jury could have found in the light most favorable to the nonmoving party, the plaintiff.  O'Brien v. Pearson, 449 Mass. 377, 383 (2007).  In early 2015, O'Brien was living with Fenton and her ten year old son, who was autistic.[7]  At that time, there was an open DCF case involving the child's biological father.  The case did not involve any allegations of abuse or neglect against Fenton or O'Brien.  The DCF ongoing social worker assigned to the case, Kirk Russell, learned that O'Brien was living with the child.  Per DCF policy, Russell conducted a background check on O'Brien, for which he used the name "Robert J. O'Brien" and O'Brien's date of birth.  The background check suggested that O'Brien had a criminal history, and that someone with the same first and last name, middle initial, and date of birth had a history with

---

[5] In addition, the defendants argued that O'Brien could not recover on both his negligence and civil rights claims as doing so would amount to a double recovery.  However, the judge did not address this argument.

[6] O'Brien also appeals from the judge's denial of his motion for attorney's fees.  Because we affirm the judgment, we also affirm the denial of this motion.

[7] Although O'Brien did not make any payments toward rent, nor was his name on the lease of the premises, there is no dispute that he was residing in the home with Fenton's permission.

DCF.  On further inquiry, Russell's supervisor, Catherine

Dwelly, discovered that DCF previously had substantiated a

report of sexual abuse of a minor child by a Robert O'Brien in

2006.  See G. L. c. 119, §§ 51A and 51B.  The perpetrator in

that case was described as white, English speaking, in his

forties, residing in Medford, and missing front teeth -- a

description that in many respects matched that of O'Brien the

plaintiff.[8]

Dwelly believed that both the criminal and DCF history

related to O'Brien (the plaintiff) and therefore, she shared the

results of the background check with her supervisor, Jacque

Carl.  The two then developed a "safety plan"[9] for the child as a

preventative measure even though DCF had no reason to believe

that O'Brien had abused or neglected Fenton's son.  Carl

instructed Dwelly to call Russell regarding the safety plan, and

[8] The only notable difference was that plaintiff O'Brien was
born in Medford and lived in Medford around 2005, but he did not
live there in 2006.  However, DCF was only aware that O'Brien
had lived in Medford, as well as the nearby town of Malden, at
some point.  In addition, although DCF did not know it, O'Brien
had two false front teeth.  DCF attempted to obtain information
about O'Brien's teeth, but he refused to provide it.  Thus, at
the time DCF asked O'Brien to leave Fenton's home, DCF had only
confirmed that he was white and English speaking, had a prior
Medford residence, and would have been in his forties in 2006.

[9] There are no formal policies, procedures, regulations, or
laws regarding DCF's use of safety plans.  Rather, a "safety
plan" is an informal term used to describe DCF's attempts to
quickly address safety concerns that do not rise to the level of
abuse or neglect, as well as to prevent future abuse or neglect
of children.

4

direct Russell to ask Fenton to have O'Brien leave the home. Dwelly did so and Russell promptly visited the home to inform O'Brien of DCF's concerns regarding the supported allegations of sexual abuse by Robert O'Brien in 2006, which O'Brien emphatically denied was him. Russell did not provide O'Brien with any documentation or further details regarding the allegations, but he told O'Brien to leave the home that day. He further told O'Brien that if he did not vacate the premises, then DCF would initiate a legal consultation to determine potential next steps, one of which was the possibility of DCF filing a complaint in the Juvenile Court to obtain custody of Fenton's child. Russell requested identifying information and proof of prior residences from O'Brien, who provided only his driver's license. O'Brien declined to provide his social security number and informed Russell that he would like to consult with his attorney.[10] Russell told O'Brien that if there was a mistake, then it would be cleared up within a couple days.

On the assumptions that the situation would be resolved quickly and that he had no choice in the matter, O'Brien packed a bag for a few days and left the home that night. However, it took four months (and the initiation of this lawsuit) for DCF to

---

[10] The jury found O'Brien 25% contributorily negligent for choosing not to provide DCF with more information that could have excluded him as the person described in the 2006 case.

determine that O'Brien was not the same Robert O'Brien who sexually abused a child in 2006, and for DCF to allow him to return to Fenton's home.[11] As a result, O'Brien incurred substantial expenses for lodging, food, and gasoline. Additionally, O'Brien suffered feelings of sadness, shock, anger, distrust in authority, powerlessness, isolation, and depression, for which he sought counseling at the Veteran's Administration.

As noted, the jury returned a partial verdict in favor of O'Brien. In response to questions on a special verdict form, the jury found that DCF was not negligent in asking O'Brien to leave the house but was negligent for failing for four months to determine that he was not the individual with a DCF history. The jury further found that Roddy and Carl did not interfere or attempt to interfere with O'Brien's right to enjoy his property without due process of law by threats, intimidation, or coercion, but that Russell and Dwelly were liable under the MCRA for violations of O'Brien's rights to liberty and property without due process under arts. 10 and 12 of the Massachusetts Declaration of Rights.

---

[11] Shortly after O'Brien filed this lawsuit in August of 2015, Carl asked for assistance from his supervisor, Marcia Roddy, who suggested contacting the mother of the child involved in the 2006 case. The mother ultimately provided information that confirmed DCF's mistake, which prompted DCF to withdraw the safety plan.

The defendants then moved for judgment notwithstanding the verdict, which the judge granted. In ruling on the motion, the judge concluded that Russell and Dwelly were entitled to qualified immunity. The judge also concluded that DCF was not entitled to discretionary function immunity because its "ad hoc decision" to determine whether O'Brien was the same person with a DCF history four months after asking him to leave Fenton's home (and after O'Brien instituted legal proceedings) does not fall within DCF's discretionary policy-making and planning authority. The judge went on to conclude, however, that although DCF did not have immunity, O'Brien could not recover on his negligence claim because there was no evidence that he suffered physical harm or property damage.

Discussion. "A ruling on a motion for judgment notwithstanding the verdict presents a question of law that we review under the same standard as the trial judge, construing the evidence in the light most favorable to the nonmoving party -- here, [O'Brien]." Biewald v. Seven Ten Storage Software, Inc., 94 Mass. App. Ct. 376, 380 (2018). "The standard is whether the evidence, construed against the defendants, justifies the jury verdict against them." Id. "Our duty in this regard is to evaluate whether anywhere in the evidence, from whatever source derived, any combination of circumstances

7

could be found from which a reasonable inference could be made in favor of [O'Brien]."  Id., quoting O'Brien, 449 Mass. at 383.

O'Brien first claims that the judge erred by concluding that Russell and Dwelly were entitled to qualified immunity. The judge determined that even if DCF employees, namely Russell and Dwelly, did violate O'Brien's rights to enjoy his property under arts. 10 and 12 of the Massachusetts Declaration of Rights, there was no controlling authority that would have put them on notice that "safety planning" O'Brien out of the home and failing to promptly investigate whether they had the right person was unconstitutional, and an objectively reasonable DCF employee would not have known such conduct violated O'Brien's rights.  We agree with the reasoning of the judge and reach the same conclusion.

"It is well established that the MCRA incorporates the standard of immunity for public officials developed under 42 U.S.C. § 1983, and accordingly 'public officials are not liable under the [MCRA] for their discretionary acts, unless they have violated a right under Federal or State constitutional or statutory law that was clearly established at the time" (quotation omitted).  Williams v. O'Brien, 78 Mass. App. Ct. 169, 173 (2010), quoting Duarte v. Healy, 405 Mass. 43, 47 (1989).  "A right is only clearly established if, at the time of the alleged violation, 'the contours of the right allegedly

8

violated [were] sufficiently definite so that a reasonable official would appreciate that the conduct in question was unlawful.'" LaChance v. Commissioner of Correction, 463 Mass. 767, 777 (2012), S.C., 475 Mass. 757 (2016), quoting Longval v. Commissioner of Correction, 448 Mass. 412, 419 (2007). "Put another way, we must determine whether 'it would be clear to a reasonable [DCF employee] that his conduct was unlawful in the situation he confronted.'" Id., quoting Longval, supra.

O'Brien has not cited, nor are we aware of any, authority that supports his assertion that the DCF employees, including Russell and Dwelly, violated clearly established law by "safety planning" him out of the home, even in light of DCF's negligence concerning the investigation into O'Brien. In fact, our review of relevant case law supports a contrary conclusion. See, e.g., Piccone v. McClain, 586 Fed. Appx. 709, 710-711 (1st Cir. 2014), cert. denied, 577 U.S. 847 (2015) (affirming granting of qualified immunity to DCF employees who involuntarily removed plaintiff from family home while investigating allegations of abuse against him); Hatch v. Department for Children, Youth, & Their Families, 274 F.3d 12, 22 (1st Cir. 2001) ("[T]he government has a compelling interest in safeguarding children that it suspects are victims of abuse and in acting quickly on their behalf. . . . Circumstances frequently force them to make difficult choices without time for extensive investigation . . .

and it is better to err on the side of caution than to do nothing and await incontrovertible proof"); Wilmot v. Tracey, 938 F. Supp. 2d 116, 136-137 (D. Mass. 2013) (DCF did not violate parent's constitutional rights by asking parent not to return home while DCF investigated child abuse allegations). Nor are we aware of any clearly established right to a timely, thorough investigation to confirm the accuracy of the information that prompted the removal.  Thus, even if we were to assume that O'Brien's constitutional rights were violated, as the judge did, we cannot say that an objectively reasonable person in the position of the DCF employees would have known that their conduct amounted to a violation of O'Brien's rights. Accordingly, we agree that Russell and Dwelly are entitled to qualified immunity and, therefore, the judge properly entered judgment in their favor.

Next, O'Brien claims that the judge erred by entering a judgment notwithstanding the verdict on his MTCA claim against DCF on the ground that the absence of evidence that he suffered physical injury or property damage, the so-called "economic loss rule," bars recovery.  He argues that the rule does not apply to tort claims against the government.

As an initial matter, DCF claims that O'Brien has waived this argument, as he did not raise it below.  See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006), quoting Century

10

Fire & Marine Ins. Corp. v. Bank of New England-Bristol County, N.A., 405 Mass. 420, 421 n.2 (1989) ("An issue not raised or argued below may not be argued for the first time on appeal"). We agree.  Our review of the record leads us to conclude that O'Brien did not sufficiently object to the application of the economic loss rule at any point and did not argue that the rule itself does not apply to tort claims against government actors.

In any event, the argument has no merit.  "The long-standing rule in this Commonwealth . . . is that 'purely economic losses are unrecoverable in tort . . . in the absence of personal injury or property damage.'"  Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 413 (2003), quoting FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993).  The MTCA provides, in relevant part, "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances." G. L. c. 258, § 2.  Because the economic loss rule applies to private individuals, it applies to the public employers "in the same manner and to the same extent."  Id.

Here, there was no evidence that O'Brien suffered personal injury or property damage as a result of DCF's negligence.

11

Therefore, the judge correctly determined that he could not recover damages on his MTCA claim.

Judgment affirmed.

By the Court (Green, C.J., Vuono & Massing, JJ.[12]),

Clerk

Entered:  August 14, 2024.

---

[12] The panelists are listed in order of seniority.