SUPERIOR COURT 
 
 GELFI DIAZ v. DEPARTMENT OF CORRECTION and JOHN/JANE DOES

 
 Docket:
 2184CV00102-C
 
 
 Dates:
 February 5, 2025
 
 
 Present:
 Robert B. Gordon
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMARY JUDGMENT
 
 

 
            Plaintiff Gelfi Diaz ("Diaz" or the "Plaintiff") is a formerly incarcerated inmate at the Massachusetts Correctional Institute in Concord, Massachusetts ("MCI-Concord").Defendants Department of Correction ("DOC") and unidentified John/Jane Doe administrators managed the prison facility in which Diaz served his sentence. Diaz has brought claims for premises . negligence, asserted under the Massachusetts Tort Claims Act, and for alleged violations of his Eighth Amendment rights under 42 U.S.C. § 1983. Presented for decision is the Defendants' Motion for Summary Judgment. For the reasons which follow, the Defendants' motion shall be ALLOWED.
 
                                                            -1-
 
FACTUALBACKGROUND[1]
            On July 23, 2019, Diaz was walking outside the entrance of MCI-Concord's H Building when he suffered a fall. The fall resulted when the earth below Diaz's right foot gave way, causing Diaz to collapse into a sinkhole. Diaz sustained injuries to his leg as a consequence of the fall.
            Following this accident , the DOC taped off the area where Diaz fell and arranged for a contractor (K..S. Carroll) to repair the site. K.S. Carroll repaired the sinkhole the next day, July 24, 2019.
            Subsequent investigation by the DOC's maintenance division and K.S. Carroll revealed that the cause of the sinkhole was an underground water main break beneath MCI-Concord's H Building. The summary judgment record reflects that neither the DOC nor any identified employee thereof had any actual knowledge of either an existing sinkhole outside of H Building or issues with the underground water piping underneath this facility prior to the occurrence of Diaz's fall.
            In opposing summary judgment, Plaintiff points to testimony from prison officials (viz., Officer Thibault and Sergeant Child) acknowledging that DOC had been aware for some time that there was excess heat coming into the stairwell through the basement steam pipes and leading to the gym in H Building. Although such heat was the subject of periodic complaint from inmates, which were then recorded in written maintenance reports, there was no evidence of any discernible soil erosion outside of the gym where Diaz fell. Nor is there any record evidence- beyond the conclusory and unsupported allegations of counsel contained in Plaintiffs Opposition Memorandum - that excessive heat in a facility will likely cause sinkholes to form in
 
--------------------------------------------
 
[1] The following facts are drawn from the parties' Rule 9A(b)(5) Statement of Facts and the supporting discovery materials referenced therein.
 
                                                            -2-
the ground outside of same. Plaintiff cites no expert evidence to support a claimed connection between excess heat outside of a building and soil erosion in the surrounding area; and, even if the Court could somehow take judicial notice of such a causation phenomenon (as Plaintiff urges), the existence of this connection cannot, without more, impute to the DOC and its personnel constructive knowledge of an actual sinkhole outside of MCI-Concord's H Building that posed an unreasonable risk of harm to inmates.
DISCUSSION
I.          SUMMARY  JUDGMENT STANDARD
            Summary judgment is properly allowed where there are no genuine issues of material fact, and the record demonstrates that the moving party is entitled to judgment as a matter of law. See Mass. R. Civ. P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419,422 (1983). The moving party bears the burden of affirmatively demonstrating both that there is no genuine issue of material fact on every relevant issue, and that it is entitled to judgment in accordance with the applicable law. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy this burden by submitting evidence negating an essential element of the non-moving party's claim, or by demonstrating that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. See Flesner v. Technical Commc'ns Corp., 410 Mass. 805, 809 (1991). Once the moving party satisfies this threshold burden, the burden shifts to the party opposing summary judgment, who must then identify specific record evidence establishing the existence of a genuine issue of material fact warranting trial. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). "Conclusory statements, general denials, and factual allegations not based on personal knowledge are insufficient to avoid summary judgment." Madsen v: Erwin, 395 Mass. 715, 721 (1985) (citation and quotation omitted).
 
                                                            -3-
 
Il.         PLAINTIFF'S CLAIMS
            The remaining claims in Plaintiff' s Complaint posit that the DOC and its administrators breached a duty of care owed to Diaz by failing to protect him from a dangerous condition at the prison about which they were or reasonably should have been aware. Whether asserted as a cause of action under the Massachusetts Tort Claims Act or as a violation of the Eighth Amendment redressable Wider 42 U.S.C. § 1983, the viability of Plaintiff's claim in this case turns on whether the evidence is sufficient to permit a reasonable inference of at least negligence on the part of the DOC[2]. lt is not.
            It is well settled law that premises liability in negligence turns on whether the landowners had actual or constructive notice of an unsafe condition on his property. See Sheehan v. Roche Bros. Supermarkets, 448 Mass. 780, 791 (2007). If the particular conditions causing a plaintiff's injury were not in fact known to the defendant (i.e., actual notice), and if the defendant had no demonstrated or inferable awareness of facts that should reasonably have made it cognizant of such conditions (i.e., constructive notice), then a negligence claim will not lie against it. See Bank of America, N.A. v. Casey, 474 Mass. 556 (2016).
            In the case at bar, the record stands undisputed that neither the DOC nor any of its administrators were aware of a sinkhole situated outside of MCI-Concord's H Building. There is likewise no evidence in the summary judgment record that would permit a fair and non- speculative inference that the Defendants were on notice of any conditions at the accident site

 
--------------------------------------------
 
[2] Plaintiff makes much of the fact that the DOC is not merely a premises owner, but a custodian of prison inmates to whom it is alleged to owe a higher duty of care. Although the SJC has not, to date, declared this as a matter of law, the suggested distinction is of no moment. It is well settled that neither public landowners nor state prisons are guarantors or insurers of inmate safety. See Mounsey v. Ellard. 363 Mass. 693, 709 (1993); Williams v. O'Brien. 78 Mass. App. Ct. 169, 176 (2010). Both owe persons on their property a duty to"protect them against unreasonable risk[s] of physical harm," Restatement (Second) of Torts§ 314A, and to make safe or warn of conditions on their property that they "know or ... should realize ... involve an unreasonable risk of harm." Sarkisian v. Concept Restaurants, Inc.• 471 Mass. 679, 682 (2015). See Williams, 78 Mass. App. Ct. at 176 (prison officials owe duty to protect inmates "against unreasonable harm," the risk of which is known or reasonably should have been known).
 
                                                            -4-
 
(either on the exterior ground or in the underground water piping) to give them constructive notice of an unreasonable danger that a sinkhole might form. The most that Plaintiff has cited to the Court is testimony from prison administrators acknowledging that the DOC was aware for some time that there was excess heat emanating from the basement steam pipes underneath the stairwell that leads to the H Building gym. But there is no evidence of any kind- lay or expert - drawing a connection between excess heat inside of a facility and dangerous sinkholes external to it. No evidence suggests that excessive heat from underground steam pipes causes soil erosion in surrounding areas (or that it .in fact did so in this case, see infra). In point of fact, this Court has previously taken judicial notice of the fact that sinkholes are typically produced by "an accumulation of rainwater above an underground cavity or loose soil, causing the earth to compact and sink under the weight." See LaSelva v. City of Boston, No. 1984CV01583-C,2021
WL 3621896, at *3 (Mass. Super. Ct. Aug. 15, 2021) (Gordon, J.), citing Jae-Young Kwak et al., Experimental Assessment of the Relationship Between Rainfall Intensity and Sinkholes Caused by Damaged Sewer Pipes, 20 Nat. Hazards Earth Syst Sci. 3343 (2020).
            Even if there were a causal connection between internal building heat and exterior soil erosion producing sinkholes as a matter of science, and Plaintiff has cited no expert evidence to this effect, a viable negligence claim in this case would still require proof that the DOC was fairly on notice of same. See Sheehan, 448 Mass. at 784 (defendant must have "reasonable opportunity to discover and correct any hazards"). That administrators at MCI-Concord were aware that H Building was overheated cannot, without more, impute to them an awareness or constructive awareness of esoteric science suggesting the likely presence of sinkholes outside this facility posing an unreasonable risk of harm to inmates. See Toubiana v. Priestly. 402 Mass. 84, 88·89 (1988) (landowner not held to standard of expert or most prudent person, but rather to
 
                                                            -5-
 
that of ordinarily prudent person with the information landowner in fact possessed before' the incident).
            Finally, even if there were a demonstrated scientific connection between building heat and exterior sinkholes (and there is not), and even if there were evidence that the DOC defendants were aware of this general phenomenon, the fact remains that the summary judgment record contains no proof that excess heat at H Building disregarded by the DOC in fact caused the sinkhole into which Diaz fell on this occasion. As the Court recognized in LaSelva, "[a]ny number of environmental factors ... entirely unrelated to human negligence may contribute to soil erosion or subsiding at an outdoor [site], including the site's particular soil type and clay content, the amount of area rainfall and flooding, and groundwater levels at the [site] . . . " LaSelva, supra at *3, citing Haibat Ali & Jae-ho Choi, Risk Prediction of Sinkhole occurrence for Different Subsurface Soil Profiles Due to Leakages from Underground Sewer and Water Pipelines, 12 Sustainability 310 (2020). Plaintiffs summary assertion that negligence on the part of the DOC in failing to address excess heat inside of H Building more likely than not caused the sinkhole into which Diaz fell, in addition to lacking factual support of its own from an expert, fails to account for any of these alternate causation-defeating explanations of what occurred. See Enrich v. Windmere Corp., 416 Mass. 83, 87 (1993) ("While a plaintiff need not show the exact cause of the accident or exclude all other possible causes, he must show that there is a greater probability than not that the [injuries] resulted from the defendant's negligence.".)[3]
 
--------------------------------------------
 
[3] None of this is groundbreaking. At hearing, Plaintiff's counsel argued, for the first time, that a defendant aware of excess heating emanating from underground pipes in a building may (without more) be deemed negligent for failing to correct for above-ground sinkholes caused by same (such causation a matter of"common knowledge") under the doctrine of res ipsa loquitur. The Court does not agree that the scientific questions raised in this case are matters of common knowledge, and thus rejects the suggestion that a lay jury could reasonably find the DOC negligent for failing to correct for the non-obvious sinkhole outside of H Building merely on the basis that it knew about the subterranean steam heat. The doctrine of res ipsa loquitur has no application in these circumstances. See Enrich 416 Mass. at 88 ("This doctrine permits a trier of fact to draw an inference of negligence in the absence of a finding of a
 
                                                            -6-
 
            In the final analysis, the record in this case contains no probative evidence from which a reasonable inference can be drawn that negligence on the part of the DOC and its staff at MCI- Concord more likely than not caused Diaz's injuries. Absent evidence of negligence and causation, Plaintiff's claims fail as a matter of law and are properly dismissed. See Kennedy v. Abramson, 100 Mass. App. Ct. 775, 780 (2022), quoting Mullins v. Pine Manor College, 389 Mass. 47, 58 (1983) (to prevail on a negligence claim, evidence must establish that ''there was a greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause").[4]
CONCLUSION AND ORDER
            For all the foregoing reasons, the Defendants' Motion for Summary Judgment shall be, and hereby is, ALLOWED. ·
SO ORDERED.
/s/Robert B. Gordon
Justice of the Superior Court
February 5, 2025
 
--------------------------------------------
 
specific cause of the occurrence when an accident is of the kind that does not ordinarily happen unless the defendant was negligent in some respect and other responsible causes ... are sufficiently eliminated by the evidence".).
[4] These evidentiary deficits are, of course, equally fatal to Plaintiff's Section 1983 claim. An Eighth Amendment violation requires far more than simple negligence, vjz.,."deliberate indifference" to known and substantial risk of "serious harm,'' to sustain a cause of action. See v Commissioner of Corr., 484 Mass. 698, 718-20 (2020). The evidence in the present case does not remotely approach this standard of civil culpability.